IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

JENNINE LABUZAN-DELANE                                                     PLAINTIFF

v.                                              CIVIL ACTION NO: 4:22-CV-149-SA-DAS

COCHRAN & COCHRAN LAND CO. INC.,
COCHRAN FARMS, INC., LAKELAND
FARMS, LLC, GREENLEE FAMILY, LLC,
JENNINGS FARMS, INC and
DAVID T. COCHRAN                                                 DEFENDANTS

ORDER AND MEMORANDUM OPINION

On September 25, 2022, Jennine Labuzan-Delane initiated this action by filing her *pro se* Complaint [1]. On February 2, 2023, she filed her First Amended Complaint [41], wherein she named the following Defendants: Greenlee Family, LLC, Lakeland Farms, LLC, Cochran & Cochran Land Co. Inc., Cochran Farms, Inc., Jennings Farms, Inc., and David T. Cochran ("the Defendants").[1] The parties have engaged in extensive motion practice, and there are currently eight pending Motions [55, 58, 60, 63, 68, 70, 72, 91] in the case. Having reviewed the filings, as well as the applicable authorities, the Court is prepared to rule.

*Relevant Factual and Procedural Background*

Labuzan-Delane alleges that Greenlee Family, Lakeland Farms, and the Cochran Defendants are wrongfully occupying and claiming ownership of land that she inherited from her ancestor, Charles Augustus Labuzan ("Mr. Labuzan").[2]

---

[1] The Court notes that Cochran & Cochran Land Co. Inc., Cochran Farms, Inc., Jennings Farms, Inc., and David T. Cochran are all represented by the same counsel. For the sake of clarity, the Court will refer to these Defendants as "the Cochran Defendants."

[2] According to the genealogical breakdown included in her Amended Complaint [41], Labuzan-Delane is the great-great-great granddaughter of Charles Augustus Labuzan. *See* [41] at p. 3.

On August 10, 1836, Mr. Labuzan, Frederick W. Schmidt, and Robert L. DeCoin purchased Sections 33, 34, and 35 of Township 16, Range 8 West in Washington County, Mississippi from the Federal Government. Of the 1,361 acres acquired, Mr. Labuzan, Schmidt and DeCoin were tenants in common and Mr. Labuzan owned a one-fourth interest in the land. According to Labuzan-Delane's Amended Complaint [41], a patent for the land was issued from the Federal Government to Mr. Labuzan, Schmidt, and DeCoin on December 10, 1840 and recorded in the land records on April 3, 1919. The patent vested Mr. Labuzan and the other grantees with a fee simple ownership of the property. The patent also included language that the property ownership was "to their heirs and assigns forever." [41] at p. 2. Labuzan-Delane contends that this language means that the patent vested an interest in Mr. Labuzan for eternity and, as his heir, she is the rightful owner of the land.

Conversely, the Defendants contend that Labuzan-Delane is not the rightful owner of the land because Mr. Labuzan conveyed his interest to the Merchants Bank of New Orleans in 1848. According to sectional indices attached to Lakeland Farms' Answer [54], Mr. Labuzan conveyed his one-fourth interest to Charles Gardiner on July 8, 1837. *See* [54], Ex. 2 at p. 1. In a deed dated July 8, 1842, Charles Gardiner conveyed the interest back to Mr. Labuzan. Mr. Labuzan then sold his interest to Merchants Bank of New Orleans through a warranty deed dated March 20, 1848. The deed was recorded on August 12, 1848. Although the Defendants contend that Labuzan-Delane is not the rightful owner of the property because he sold his interest in the land, Labuzan-Delane contends that, Mr. Labuzan's signature on the 1848 deed is forged and patented lands cannot be adversely possessed.

Labuzan-Delane's Amended Complaint [41] sets forth one claim of ejectment, alleging that the Defendants are in unlawful possession of the land. According to her Amended Complaint

[41], the Defendants are jointly possessing acres within Sections 33, 34, and 35 of the land in Washington County. She specifically contends that "[s]ome Defendants have leasing agreements with entities and/or individuals for the purpose of engaging in unauthorized timber and/or mineral operations." [46] at p. 10. According to the warranty deed attached to its Answer [46], Greenlee Family acquired ownership of the land on March 18, 2021.[3] Attached to its Motion [68], Lakeland Farm's warranty deed shows that it acquired its interest in the land on December 20, 2012.

On April 28, 2022, Labuzan-Delane filed a Quitclaim Deed—from herself as grantor to herself as grantee—conveying the subject property to herself. In their Answers [46, 52, 54], all of the Defendants bring forth counterclaims, including claims for Slander of Title, Removal of Cloud on Title, Adverse Possession, violations of the Mississippi Litigation Accountability Act, and requests for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure. Labuzan-Delane has filed separate Motions to Dismiss [55, 63, 70] the Defendants' counterclaims. In turn, Greenlee Family and Lakeland Farms filed Motions for Summary Judgment [58, 68] seeking dismissal of Labuzan-Delane's ejectment claim.[4]

*Analysis and Discussion*

The Court will first address Greenlee Family's and Lakeland Farms' Motions for Summary Judgment [58, 68]. Then, the Court will resolve Labuzan-Delane's Motions to Dismiss [53, 63, 70].

I. *Greenlee Family's and Lakeland Farms' Motions for Summary Judgment [58, 68]*

Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV.

---

[3] Greenlee contends that it owns about 60 acres of the original 1,361 acres that were acquired by Mr. Labuzan and the two other grantees.
[4] The Cochran Defendants filed Joinders to both Motions for Summary Judgment [58, 68]. *See* [61, 76].

P. 56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Nabors v. Malone*, 2019 WL 2617240, at *1 (N.D. Miss. June 26, 2019) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

"The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.'" *Id*. (quoting *Celotex*, 477 U.S. at 323). "The nonmoving party must then 'go beyond the pleadings' and 'designate specific facts showing that there is a genuine issue for trial.'" *Id*. (quoting *Celotex*, 477 U.S. at 324). Importantly, "the inferences to be drawn from the underlying facts contained in the affidavits, depositions, and exhibits of record must be viewed in the light most favorable to the party opposing the motion." *Waste Mgmt. of La., LLC v. River Birch, Inc.*, 920 F.3d 958, 964 (5th Cir. 2019) (quoting *Reingold v. Swiftships, Inc.*, 126 F.3d 645, 646 (5th Cir. 1997)). However, "[c]onclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial." *Nabors*, 2019 WL 2617240 at *1 (citing *TIG Ins. Co. v. Sedgewick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)) (additional citations omitted).

Both Greenlee Family and Lakeland Farms filed Motions for Summary Judgment [58, 68] seeking dismissal of Labuzan-Delane's ejectment claim on the ground that her ancestor, Mr. Labuzan, conveyed his interest away in 1848, and even if he had not, the doctrine of adverse possession forecloses any claim Labuzan-Delane may have.

First, the Defendants contend that on March 20, 1848, Mr. Labuzan conveyed his full, one-fourth interest of the property to the Merchants Bank of New Orleans. Specifically, Greenlee

Family argues that "Mr. Labuzan conveyed his entire fee-interest in the property to Merchants Bank, and therefore severed any heir or future descendants' claim to the subject property." [59] at p. 3. Both Greenlee Family and Lakeland farms rely on certified land records attached to their Motions [58, 68], which show Mr. Labuzan transferring his interest to Merchants Bank through a warranty deed. *See* [58], Ex. 1; [68], Ex. 5. Additionally, Lakeland Farms argues that "[Labuzan-Delane] omitted the first several pages of the Section Indices, each of which would have disclosed to Plaintiff that her alleged ancestory [sic], Charles A. Labuzan, acquired an interest in the property on August 10, 1836, and sold his interest in 1848." [69] at p. 2.

Moreover, the Defendants contend that even if there were no certifiable records showing that Mr. Labuzan transferred his interest in 1848, the land has been adversely possessed for 175 years. The Defendants contend that, prior to acquiring the land, several others were in possession of the land. Labuzan-Delane does not dispute the fact that others have possessed the land since 1848, she instead simply argues that patented land cannot be adversely possessed.

In response, Labuzan-Delane maintains her position that she is the rightful owner of the property in Washington County. The crux of her argument is that Mr. Labuzan's signature was forged on the 1848 deed to Merchants Bank and the land patent gave Mr. Labuzan's heirs an interest in the land forever. Labuzan-Delane specifically argues that the signature on the 1848 instrument conveying the land to Merchants Bank is not the original signature of Mr. Labuzan. She contends that Mr. Labuzan's real signature is the one included on the 1846 Live Birth Certificate, which is attached to her Motion for Judicial Notice [72]. Essentially, Labuzan-Delane argues that the signature from the 1848 deed and the signature from the 1846 Birth Certificate are not the same. Her argument is grounded in the fact that each signature contains different variations of the letter "C", and therefore the signatures are not the same.

5

"When a party challenges the validity of a properly [] acknowledged deed, that party must overcome several presumptions favoring the legitimacy of the document." *Mapp v. Chambers*, 25 So. 3d 1096, 1101 (Miss. Ct. App. 2010). "One of the presumptions is authenticity, which 'provides that, where a deed is properly acknowledged, the instrument is presumed to be authentic because the certificate of acknowledgment infers verity and presumptively states the truth.'" *Catlett v. Catlett*, 358 So. 3d 366, 374 (Miss. Ct. App. 2023) (quoting *Mapp*, So. 3d at 1101). Here, the Defendants concede that the 1848 deed does not contain the original signature of Mr. Labuzan. However, according to the Defendants, this is because in 1848 photocopiers did not exist, and it was the job of the county clerk to record the deed through her own handwriting. To support their position, the Defendants cite the Hutchinson's Code, which is now codified as Miss. Code Ann. § 89-5-25(1). The Code provides in pertinent part:

> (1) It shall be the duty of the clerk of the chancery court to whom any written instrument is delivered to be recorded, and which is properly recordable in his county, to record the same without delay, together with the acknowledgments of proofs and the certificates thereof, and also the plats of survey, schedules, and other papers thereto annexed, *by entering them word for word in a fair handwriting*, or typewriting, or by filling up printed forms, or by recording by photostat machine or by other equally permanent photographic or electronic process, and entering the hour and minute, the day of the month, and the year when the instrument was delivered to him for record, and when recorded.

Miss. Code. Ann. § 89-5-25 (emphasis added).

Under Mississippi law, "[i]t is presumed that the notary making a certificate of acknowledgment has certified truth and has not been guilty of a wrongful or criminal action. The presumption has been stated to be one of the strongest in the law." *Matthews v. Whitney Bank*, 282 So. 3d 786, 792 (Miss. Ct. App. 2019) (quoting *Nichols v. Sauls' Est.*, 250 Miss. 307, 316, 165 So. 2d 352, 356 (1964)). "This presumption can be overcome only by clear and convincing evidence." *Mapp*, 25 So. 3d at 1101.

Labuzan-Delane has not provided any evidence that the county clerk engaged in any criminal conduct when recording the 1848 deed. The only argument Labuzan-Delane provides is that "during discovery [] [she'll] secure the affidavits of certified forensic handwriting experts to attest to the disputed signatures to the fact that the evidence suggests that the individual who wrote said March 20, 1848 sales contract is the same individual who signed my ancestor's signature." [82] at p. 9. The Court finds this argument unavailing. As noted above, the Defendants admit that the signature on the 1848 deed is not Mr. Labuzan's original signature. Instead, it is the signature of the county clerk because she recorded the instrument through her own handwriting. Labuzan-Delane has come forward with no summary judgment type evidence to support her position. In addition, she has not made a Rule 56(d) request that she be permitted to engage in discovery before responding to Defendants' requests for summary judgment.

Furthermore, even if the Court found that Mr. Labuzan's signature was forged on the 1848 deed to Merchants Bank, the doctrine of adverse possession would foreclose any claim Labuzan-Delane may have. In Mississippi, "to establish a claim of adverse possession, [the claimant] must show that his possession was '(1) under claim of ownership; (2) actual or hostile; (3) open, notorious, and visible; (4) continuous and uninterrupted for a period of ten years; (5) exclusive; and (6) peaceful.'" *Anderson v. Jackson*, 338 So. 3d 629, 641 (Miss. Ct. App. 2022) (quoting *West v. Brewer*, 579 So. 2d 1261, 1262 (Miss. 1991)). Greenlee Family and Lakeland Farms contend, and Labuzan-Delane does not contest, that several others have openly possessed the lands since 1848. Despite conceding that others have possessed this property for almost 200 years, Labuzan-Delane argues that her ownership of the land comes directly from the land patent and that the land cannot be adversely possessed.

To support her contention, Labuzan-Delane relies on several cases: *De la Vergne Refrigerating Mach. Co. v. Featherstone*, 147 U.S. 209, 13 S. Ct. 283, 37 L. Ed. 138 (1893); *Gibson v. Chouteau*, 80 U.S. 92, 20 L. Ed. 534 (1871); *Redfield v. Parks*, 132 U.S. 239, 10 S. Ct. 83, 33 L. Ed. 327 (1889); *Willoughby v. Caston*, 72 So. 129 (Miss. 1916). In *Featherstone*, the Supreme Court held that when a grantee applies for a patent but dies before the patent is issued, the patent will still pass to his heirs. *Featherstone*, 147 U.S. at 230. In *Gibson*, the Supreme Court held that the statute of limitations for adverse possession does not run if the Government owns the land. *Gibson*, 80 U.S. at 104. In *Redfield*, the Supreme Court concluded that a plaintiff cannot bring a claim of ejectment until the title passes from the Government to a private citizen and adverse possession does not apply to land when the Government still holds the title to the land. *Redfield*, 132 U.S. at 243. Similar to the holding in *Gibson*, the court in *Willoughby* found that land owned by the Government cannot be adversely possessed. *Willoughby*, 72 So. at 131. The Court finds these cases distinguishable from the case at bar. Here, Labuzan-Delane argues that because Mr. Labuzan received a land patent from the Government, the land can never be adversely possessed by private individuals. None of these cases support that proposition.

Importantly, the Supreme Court held that land received through a patent remains with the grantee's heirs *unless the land is conveyed away by the grantee or by the heirs*. *French's Lessee v. Spencer*, 62 U.S. 228, 232, 16 L. Ed. 97 (1858). That is precisely what occurred here.

For reasons articulated above, Labuzan-Delane's ejectment claim must fail. That claim is hereby DISMISSED.

II.     *Labuzan-Delane's Motions to Dismiss Counterclaims [55, 63, 70]*

Having dismissed Labuzan-Delane's ejectment claim, the Court now turns to the Defendants' counterclaims. Greenlee Family and the Cochran Defendants assert the following

8

counterclaims: Slander of Title and Removal of Cloud on Title. Lakeland Farms asserts the following counterclaims: Slander of Title, Removal of Cloud on Title, Adverse Possession, violation of the Mississippi Litigation Accountability Act, and they also seek sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, 129 S. Ct. 1937.

Ultimately, the district court's task "is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *In re McCoy*, 666 F.3d 924, 926 (5th Cir. 2012) (citing *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)). Therefore, the reviewing court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232-33 (5th Cir. 2009). Still, this standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*, 556 U.S. at 678, 129 S. Ct. 1937.

Although Labuzan-Delane filed separate Motions to Dismiss [55, 63, 70], her arguments articulated in those Motions [55, 63, 70] are the same. In essence, she makes the same arguments that she raised in support of her ejectment claim. For example, she contends that the slander of title claim fails because patented land cannot be sold—an argument this Court has already rejected. In their Answer [54], Lakeland Farms also asserts a counterclaim for adverse possession. Although

9

Labuzan-Delane does not dispute the fact that others have occupied the land, she argues that patented land cannot be adversely possessed. In its analysis above, the Court has also rejected that argument. The Court sees no need to again set forth the reasoning as to why those arguments are meritless. Labuzan-Delane has not shown that the counterclaims should be dismissed. Her Motions [55, 63, 70] are therefore DENIED.

*Conclusion*

For the reasons set forth above, Greenlee Family's and Lakeland Farms' Motions for Summary Judgment [58, 68] are GRANTED.[5] Labuzan-Delane's ejectment claim set forth in her Amended Complaint [41] is DISMISSED *with prejudice* as to all Defendants. The Defendants' counterclaims remain pending at this time.[6]

SO ORDERED, this the 24th day of July, 2023.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE

---

[5] The Court notes that Lakeland Farms filed a Motion to Strike [91] Labuzan-Delane's second Reply [90] to Lakeland Farms' Motion [68]. As Lakeland Farms points out, Labuzan-Delane's Reply [90] is not an authorized filing and runs afoul of L.U. CIV. R. 7. In light of the Court's ruling in granting Lakeland Farms' Motion for Summary Judgment [68], Lakeland Farms' Motion to Strike [91] is denied as MOOT.

[6] The Court notes that Labuzan-Delane also filed a Motion for Judicial Notice [72], requesting that the Court take judicial notice of certain documents. In reaching its ruling, the Court has in fact taken the same into consideration. The Motion for Judicial Notice [72] need not remain pending and is hereby TERMINATED on the docket.